# Lipps *versus* The City of Philadelphia.

*Liability of Lot-owners in Philadelphia for expense of Culverting.— The Acts of Assembly on this subject construed.*

1. Under the new system of culverting provided in 1855, by Act of Assembly—whereby the city of Philadelphia was entitled to charge adjacent owners with part of the cost of culverting along their respective lots—the lot-owners enjoying the privilege of drainage into the culvert of Cohocksink creek, are subjected to the customary assessment for its construction.

2. The Act of 1855 provided a new rule in allowing a private assessment to the extent of seventy-five cents per lineal foot, and in so far repealed all prior acts inconsistent with it.

ERROR to the Common Pleas of *Philadelphia*.

This was a *scire facias* on a lien filed February 6th 1860, by the City of Philadelphia, to the use of Daniel Stone, against a lot of ground on the east side of Second street, and the southeast side of Germantown Road, in the Sixteenth Ward, belonging to John Lipps, for forty-two feet of culvert laid in Second street, in front of said premises, at seventy-five cents per foot, amounting to $31.50.

[*Lipps v.* The City of Philadelphia.]

The culvert was constructed under an ordinance, approved February 27th 1858, authorizing a culvert from the "west side of Fifth street, along Thompson street to the Germantown Road, thence along the Germantown Road to the Cohocksink creek, thence on the said creek to Front street, with a branch westward from the intersection of Germantown Road and Cohocksink creek, and along said creek to Culvert street, and thence on Culvert street to Fourth street."

The defendant Lipps, on the 23d of June 1860, filed the following affidavit of defence:—

"John Lipps, being duly sworn, according to law, doth depose and say, that he has a just and legal defence to the plaintiffs' demand, the nature and character of which are as follows:

"The culvert in question was not for the ordinary purposes of drainage, but to conduct off the waters of the Cohocksink creek, which creek was distant and remote from defendant's lot, which is high ground, and obtains no advantage from said culvert; besides, the course of said culvert does not follow the line of said creek, but is carried along streets. Inasmuch as no advantage would accrue to owners of lots along the streets in which said culvert would pass, the Act of Assembly, authorizing and directing the construction thereof, expressly provided that the same should be constructed wholly at the public expense, and not at the cost and expense of property holders. See Acts of Assembly passed February 20th 1851, § 1, and Act of Assembly passed April 27th 1852, §§ 4 and 5."

The court below entered judgment for plaintiff for want of a sufficient affidavit of defence. This writ was then sued out by defendant, who assigned the entry of said judgment for error.

*Wm. O. Kline* and *Wm. L. Hirst,* for plaintiff in error, admitted the general right of the city to assess private property for culverts of drainage in front of their property, but claimed that this was an exceptional case. The laws which authorized the erection of this culvert, provided that the expense should be borne by the districts of Kensington, Northern Liberties, and Spring Garden, because it would be grossly unjust to charge the expense of draining off a creek, upon persons owning property remote from its course.

By the Consolidation Act, the city is the successor of these districts. This case is unlike The City *v.* Tryon, 11 Casey 401, but our view of it is sustained by the reasoning of the learned judge who delivered the opinion in the case above mentioned.

It would be inconsistent with the rules of construction, to hold that the Acts of 1851 and 1852, which provided that Cohocksink creek should be culverted at the general expense, were repealed by Act of 1855, because they were enacted for a spe-

cial purpose, and have no connexion with the general system inaugurated by the Act of 1855. They can exist together, without any inconvenience or unfairness.

*David W. Sellers*, for defendant in error.—This case differs in no material point from The City *v.* Tryon, 11 Casey 401. The culvert for which this claim was filed, was constructed by virtue of the same municipal powers and under the same ordinance. That defendant is not released from liability by reason of legislation prior to the Act of Consolidation, is evident from these considerations, viz. :

1. It does not appear that the present city has proceeded under those laws; on the contrary, the loan created for the construction of this and other culverts, was created on the faith of the entire city, and the interest thereupon is paid by all of the tax-payers.

2. These acts can only be construed as conferring additional powers on the former districts, which the present city has inherited. It was necessary to say in those acts, that the cost of construction should be paid out of general taxation, otherwise the owners of ground would have been obliged to pay for the same, as prior laws gave a right of lien for the entire cost: Act of 16th April 1840, §§ 9 and 11, P. L. 1840, pp. 412, 413.

The opinion of the court was delivered by

WOODWARD, J.—The Acts of Assembly of 20th February 1851, and 27th April 1852, authorized the commissioners of the incorporated districts of Kensington and the Northern Liberties, in conjunction with the commissioners of the county of Philadelphia, to culvert the Cohocksink creek, and to charge the expense thereof to their respective municipalities, in equal proportions. Had the work been done under these Acts, without subsequent legislation, the cost of it would have fallen upon the general taxation of the two districts named, and of the county.

And when by the Act of Consolidation of 2d February 1854, the city of Philadelphia became the municipal successor of the districts, and the territorial coequal of the county, all the powers and privileges conferred by the above-named Acts of 1851 and 1852 vested in the consolidated city, and had she proceeded without further legislation to culvert Cohocksink, she could have defrayed the cost no otherwise than out of the general taxation.

But in 1855 a new system of culverting was provided, whereby the city was enabled to charge adjacent lot-owners with part of the cost of culverting along their respective lots. The rate of such private assessments was not to exceed seventy-five cents per lineal foot according to the front of the owners, and for this amount the city might enter liens against owners in the outer

[Lipps *v.* The City of Philadelphia.]

districts, but not within the bounds of the old city ; Tryon's Case, 11 Casey 401, and Greble's Case, antè, p. 339.   Whatever a culvert should cost beyond that rate was to be defrayed, as before, out of the city purse.   It was under *this* legislation the culvert in question was built.   The ordinance was approved 27th February 1858.   It carried with it necessarily all the enabling clauses of the prior legislation—not only the acts I have mentioned, but those earlier ones which the committee of the councils advert to in their report furnished in our paper-books.   It would seem from these that the line of Cohocksink creek has long been known and treated as a street ; that provision was made as early as 1829 for culverting it, and that the usual right of drainage into it was secured to property holders fronting thereon.

The city had ample authority in 1858 for building this culvert, but they were compelled to build it under the provisions of the Act of 1855.   That act attached itself to this culvert, as to all others the city might build.   It is argued that the act does not apply, because this culvert was authorized by special legislation, passed in 1851 and 1852—that by that legislation, general taxation was to pay for it, and that these acts are not repealed by the Act of 1855, because there is no inconsistency between them. The city would have had authority to build the culvert in 1858, if the Acts of 1851 and 1852 had never existed ; but their existence increased the corporate authority, whilst the Act of 1855 regulated the exercise of it.   In the particular of paying for the culvert, the Act of 1855 is inconsistent with the Acts of 1851 and 1852, and, to the limited extent indicated, does certainly repeal them.   If they threw the whole cost on the general taxation, and the Act of 1855 placed part of it on lot-owners, and left only the residue chargeable to general taxation, how can it be said there was no inconsistency between the acts ? Manifestly, a new rule was supplied by the Act of 1855, to the extent of seventy-five cents the lineal foot, and, in so far, it repealed all prior inconsistent laws.

It seems to us to result as an inevitable deduction from the various Acts of Assembly, that lot-owners enjoy the usual privilege of drainage into this culvert, and are subject to the customary assessment for its construction.   The defendant's lot being without the boundaries of the old city, was also liable to the entry of a lien.

The judgment is affirmed.